UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DANTE A. DIFRONZO, | ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) Civil Action No. <br> ) 21-10867-FDS |
| CITY OF SOMERVILLE, et al., | ) <br> ) |
| Defendants. | ) <br> ) <br> ) |

**MEMORANDUM AND ORDER ON DEFENDANTS'
<u>MOTION FOR SUMMARY JUDGMENT</u>**

**SAYLOR, C.J.**

This is a civil action brought by a former police detective for alleged violations of his constitutional rights and for various state-law claims. Plaintiff Dante DiFronzo has filed suit against the City of Somerville, former mayor Joseph Curtatone, former chief of police David Fallon, and former police captain Bernard Cotter, alleging that they unlawfully retaliated against him for engaging in protected conduct. Specifically, he contends that he was wrongfully terminated by defendants for filing complaints with Curtatone and the Massachusetts Attorney General's Office concerning corruption in the police department.

Defendants have filed a motion for summary judgment as to all claims. For the following reasons, the motion for summary judgment will be granted in part and denied in part.

I.    **Background**

The following facts are undisputed except as noted.[1]

A.    **Factual Background**

Dante DiFronzo previously served as a detective in the Somerville Police Department ("SPD"). (Compl. at 1).

The City of Somerville is a municipality duly organized and existing under the laws of the Commonwealth of Massachusetts. (*See id.* ¶ 2).

Joseph Curtatone was formerly the City's mayor, David Fallon was the SPD's chief of police, and Bernard Cotter was a captain in the SPD. (*Id.* ¶¶ 3-5).[2]

On September 29, 2016, the City placed DiFronzo, then a detective with the SPD, on paid administrative leave subject to an investigation by the Middlesex District Attorney's Office and the SPD into an incident involving a 2015 home invasion. (Docket No. 48 at 1; Docket No. 42-2).

In March 2017, the District Attorney's Office issued a witness disclosure notice ("the *Brady* letter") concerning DiFronzo.[3] The letter stated the following:

> Now comes the Commonwealth pursuant to Mass. R. Crim. P. 14 and hereby notifies the defendant of potentially exculpatory information. During the course of an investigation into a home invasion, we learned the following facts. On February 28, 2015, Somerville Police Detective Dante DiFronzo spoke with a confidential informant ("CI"). The CI told Det. DiFronzo that an individual ("the Individual") had recently stolen marijuana from him. Detective DiFronzo knew that the CI had a violent criminal past and that the CI was looking for the Individual. The CI told Det. DiFronzo that he intended to harm the Individual.
>
> Detective DiFronzo, with this knowledge, actively assisted the CI in locating the

---

[1] Unless otherwise noted, the Court does not consider evidence concerning events that occurred after the filing of the complaint, as plaintiff has not sought leave to supplement or amend the complaint.

[2] Curtatone, Fallon, and Cotter are sued in both their individual and official capacities. (Compl. ¶¶ 3-5).

[3] It appears that the practice in Massachusetts is to make such letters generally available to counsel in state criminal cases, as opposed to doing so in specific cases.

> Individual by providing information to the CI regarding the Individual's whereabouts. After receiving this information from Det. DiFronzo, the CI participated in a home invasion on March 2, 2015, in which the Individual was stabbed multiple times with a machete requiring hospitalization and surgeries.
>
> The Commonwealth is also aware that Detective DiFronzo knowingly made material omissions in police reports that were submitted in connection with the investigation of the home invasion.

(Docket No. 42-3 at 15-16).[4]

On May 31, 2017, Fallon, who at that time was the SPD's chief of police, suspended DiFronzo for five days and recommended his termination. (*Id.* at 2-4). DiFronzo remained on paid administrative leave pending a hearing before Mayor Curtatone, the appointing authority. (Docket No. 48 at 6).

On June 1, 2017, Curtatone delegated his authority to act as the hearing officer in DiFronzo's disciplinary matter to attorney Peter Berry. (*Id.* at 9).

On October 26, 2017, before any hearings had occurred, DiFronzo wrote a letter to Curtatone complaining about issues of corruption within the SPD. (Docket No. 42-8 at 2-5).[5]

On November 7, 2017, Fallon responded to that letter, writing in relevant part:

> I remind you that the investigation is confidential at this time. Making public statements about the investigation at this time, including disparaging comments and/or allegations about the investigator or other officers, is a violation of Department policies and procedures. Further, going outside of the investigation directly to the Appointing Authority is a violation of the investigatory process. If, as a result of the investigation, there is a need for an Appointing Authority hearing, that would be the time and the forum in which you can provide anything that you claim is a defense to any charges against you.

---

[4] "'It is black-letter law that hearsay evidence cannot be considered on summary judgment' for the truth of the matter asserted." *Hannon v. Beard*, 645 F.3d 45, 49 (1st Cir. 2011) (quoting *Dávila v. Corporacion De Puerto Rico Para La Difusion Publica*, 498 F.3d 9, 17 (1st Cir. 2007)). For present purposes, the Court considers the *Brady* letter not for the truth of its contents, but to establish a chronology of events.

[5] According to the complaint, DiFronzo delivered that letter on October 30, 2017. (Compl. ¶ 50). At his deposition, he acknowledged that that was the first time that he made any corruption allegations, either verbally or in writing. (Docket No. 48-1 at 43).

3

(Docket No. 42-9 at 3).

On November 27, 2017, DiFronzo wrote a second letter to Curtatone, in which he again raised perceived issues of public corruption and expressed his intention to contact the Massachusetts Attorney General's Office. (Docket No. 42-10 at 2-3).[6]

The City's investigation report, which was authored by Cotter, was completed on December 21, 2017, before any appointment-authority hearings. (Docket No. 42-5).[7] In it, Cotter wrote that he had found "evidentiary support for each of the factual findings made by the District Attorney's Office as set forth [in its *Brady* letter]." (*Id.* at 2).

On January 2, 2018, the City amended the administrative charges to incorporate the findings of the investigation report. (Docket No. 42-6 at 2-6).

A full disciplinary hearing—occurring on four separate dates from February through April 2018—was then held in open session. (Docket No. 48 at 9-10). DiFronzo was represented by counsel of his choosing and permitted to present his own witnesses and evidence, cross-examine witnesses, and testify—which he declined to do—in his own defense. (*Id.* at 10).[8]

Berry, the hearing officer, thereafter issued a civil-service decision pursuant to Mass. Gen. Laws ch. 31, § 41. (Docket No. 42-4). He concluded that "just cause exists to sustain Chief Fallon's decision to suspend Det. DiFronzo for five days," and that "just cause exists for the Mayor to impose further discipline on Det. DiFronzo, up to and including terminating [his]

---

[6] According to the complaint, on December 7, 2017, DiFronzo wrote to the Attorney General's Office concerning his belief that defendants had engaged in acts of public corruption. (Compl. ¶ 52).

[7] DiFronzo contends that Cotter's investigation was "flawed." (Docket No. 48 at 26). There is at least some evidence supporting that assertion, including, for example, that in a departure from his standard practice, Cotter did not formally interview all relevant witnesses. (*See* Docket No. 48 at 26-27; Docket No. 48-3 at 7; Docket No. 48-6 at 3).

[8] DiFronzo asserts that at those hearings, Cotter knowingly presented false testimony. (Docket No. 48 at 10).

4

employment as a Somerville Police Officer." (*Id.* at 44). There is no evidence that Berry consulted Curtatone before making that decision. (Docket No. 48 at 13).

On May 8, 2018, Curtatone adopted Berry's findings of fact and conclusions of law in whole. (Docket No. 42-7). As a result, DiFronzo was discharged. (*Id.*).

Two days later, the Boston Globe published an article titled, "Detective Accused of Aiding Drug Dealer No Longer on Somerville Force." (Docket No. 42-16). The article attributed the following statement to Curtatone:

> "The residents of Somerville must have confidence that the sworn men and women of the Somerville Police Department will not only protect public safety but also discharge their duties with the utmost integrity," Curtatone said in a statement. "As mayor, I have a duty to maintain that excellence by holding accountable officers who violate the department's standards of conduct."

(*Id.* at 3).

DiFronzo was notified of his right to appeal the discharge decision to the Civil Service Commission. (Docket No. 48 at 13). He did not appeal. (*Id.*).

Pursuant to the collective bargaining agreement between the City and the Somerville Police Employees Association, DiFronzo's disciplinary matter, including the issue of whether there was sufficient cause to terminate, was arbitrated from October 2018 through October 2020. (*Id.* at 14; Docket No. 42-1 at 2).

As of the date the complaint was filed, the arbitrator's decision remained pending.

### B. Procedural Background

On March 26, 2021, DiFronzo filed the complaint in this action in Massachusetts state court. Defendants thereafter removed the action to this court.

The complaint alleges claims under 42 U.S.C. § 1983 (Count 1), for tortious interference with contractual and advantageous business relationships (Counts 2 and 3), for intentional and negligent infliction of emotional distress (Counts 4 and 6), for wrongful termination (Count 5),

and for defamation and slander (Count 7).

Defendants have moved for summary judgment on all claims.

## II.     Standard of Review

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990)). Summary judgment shall be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990) (citation omitted). In evaluating a summary judgment motion, the court indulges all reasonable inferences in favor of the nonmoving party. *See O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993). When "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotations omitted). The nonmoving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id.* at 256-57.

## III.    Analysis

### A.     Section 1983 Claim (Count 1)

Count 1 asserts a claim under Section 1983 against Curtatone, Fallon, and Cotter for "depriving [p]laintiff of his rights under the First, Fifth and Fourteenth Amendments to the United States Constitution not to be deprived of freedom of speech, and/or liberty or property interests without due process of law." (Compl. ¶ 138).

### 1. First Amendment

As a government employee, plaintiff's right of free speech is not the same as that of an ordinary citizen. That is because "a governmental employer may impose certain restraints on the speech of its employees, restraints that would be unconstitutional if applied to the general public." *City of San Diego v. Roe*, 543 U.S. 77, 80 (2004). To prove a claim of First Amendment retaliation as a public employee, plaintiff must establish (1) that he "spoke as a citizen on a matter of public concern"; (2) that his interest, "as a citizen, in commenting upon matters of concern" outweighs the government's interest "as an employer, in promoting the efficiency of the public services it performs through its employees"; and (3) that the protected speech was a "substantial or motivating factor in the adverse action against the plaintiff." *Davignon v. Hodgson*, 524 F.3d 91, 100 (1st Cir. 2008).

Only the third element is in dispute here. Defendants contend that there is insufficient evidence from which a jury could infer that the decision to terminate plaintiff was based on protected conduct, given that the initial recommendation to terminate him occurred before he engaged in any protected activity.

### a. Whether Plaintiff's Letters Were a Substantial or Motivating Factor in His Termination

The disputed issue is thus "whether the plaintiff can show that the protected expression was a substantial or motivating factor in [an] adverse employment decision." *Curran v. Cousins*, 509 F.3d 36, 45 (1st Cir. 2007). The resolution of that question is ordinarily a question of fact for the jury to decide. *See Davignon*, 524 F.3d at 101; *Nethersole v. Bulger*, 287 F.3d 15, 18-19 (1st Cir. 2002); *Harrington v. Aggregate Indus. Ne. Region, Inc.*, 668 F.3d 25, 33 (1st Cir. 2012) ("Courts should be especially cautious before granting summary judgment when pretext and retaliatory animus are at issue.").

Causation is analyzed under a two-step inquiry. "First, the plaintiff must show that the employer would not have taken adverse action but for the plaintiff's speech." *Davignon*, 524 F.3d at 106. If the plaintiff meets that burden, by means of either direct or circumstantial evidence, the burden shifts to the employer to establish that it would have taken the adverse action even without the protected speech. *Id.*

### i. **Whether Plaintiff Has Produced Evidence of Causation**

The initial burden on the plaintiff is "more substantial than the burden of producing prima facie evidence in, for example, the first stage of a Title VII discrimination case. The employee must produce sufficient evidence of motivation at the initial stage such that the burden of persuasion itself passes to the defendant-employer." *Diaz-Bigio v. Santini*, 652 F.3d 45, 51 n.3 (1st Cir. 2011) (internal citations and quotation marks omitted).

Here, there is circumstantial evidence of causation. "[D]eviations from standard procedures, the sequence of occurrences leading up to a challenged decision, and close temporal proximity between relevant events" "can give rise to an inference of pretext." *Harrington*, 668 F.3d at 33.

For example, there is evidence that Cotter deviated from his standard practice for internal investigations in not formally interviewing all—or indeed, most—of the relevant witnesses. In addition, less than two months after DiFronzo first accused Cotter of conducting "a biased/sham investigation," Cotter issued a report concluding that DiFronzo had violated a number of SPD rules and regulations. (Docket No. 42-8 at 3; Docket No. 42-5).

Similarly, just over a month after DiFronzo sent Curtatone a letter stating that Fallon had threatened him with further administrative charges and was "attempting to silence" him, Fallon amended the administrative charges against DiFronzo. (Docket No. 42-10 at 2; Docket No. 42-6).

Finally, Curtatone did not finalize his discharge decision until after DiFronzo accused him of engaging in unethical behavior in a series of letters written in the fall of 2017. (Docket No. 42-7).

Under the circumstances, plaintiff has succeeded in putting forth sufficient proof to establish a causal relationship between his letters and the decision to discharge him on May 8, 2018. The burden therefore shifts to defendants to show that they would have taken the same action even in the absence of the protected conduct.

### ii.      Whether Defendants Would Have Taken the Same Action Regardless

There is a genuine dispute of material fact as to whether defendants would have terminated plaintiff after the initial recommendation to terminate him was made. Specifically, plaintiff has produced evidence that even after he was issued the *Brady* letter, he was permitted to testify as a witness without being impeached. (Docket No. 42-1 at 76 n.29). In addition, the SPD has continued to employ several officers as to whom *Brady* letters have been issued that call into question their credibility and/or integrity. (*See id.*).

Accordingly, there is a material dispute of fact as to whether defendants would have taken the same action even in the absence of protected conduct, precluding summary judgment.

### 2.      Fifth Amendment

The complaint asserts that Curtatone, Fallon, and Cotter deprived plaintiff of his liberty and property interests in violation of the Fifth Amendment. "The Fifth Amendment Due Process Clause, however, applies 'only to actions of the federal government—not to those of state or local governments.'" *Martinez-Rivera v. Sanchez Ramos*, 498 F.3d 3, 8 (1st Cir. 2007) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001)). As the complaint does not allege that any of the defendants are federal actors, the Fifth Amendment claim fails as a matter of law.

*See id.*

### 3. Fourteenth Amendment

Defendants have moved for summary judgment on the Fourteenth Amendment claim on the grounds that (1) any procedural due-process claim fails because it is undisputed that plaintiff was given notice and an opportunity to be heard, and (2) any substantive due-process claim fails because no reasonable jury could find that defendants' behavior "shock[s] the conscience." In his opposition to the motion for summary judgment, plaintiff does not dispute that he was given notice and an opportunity to be heard, and he does not contend that defendants' actions were so egregious as to "shock the conscience." Accordingly, any Fourteenth Amendment claim appears to have been waived. *See Merrimon v. Unum Life Ins. Co. of Am.*, 758 F.3d 46, 57 (1st Cir. 2014) ("Even an issue raised in the complaint but ignored at summary judgment may be deemed waived. If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal.").[9]

In sum, and for the reasons set forth, summary judgment will be denied as to the First Amendment retaliation claim and granted as to the claims asserted under the Fifth and Fourteenth Amendments.

---

[9] In any event, "[s]ubstantive due process is an inappropriate avenue of relief" where, as here, the conduct at issue is covered by the First Amendment. *See Pagan v. Calderon*, 448 F.3d 16, 33-34 (1st Cir. 2006) ("It is the First Amendment, not the Fourteenth Amendment, that guards individuals against state-sponsored acts of political discrimination or retaliation.").

In addition, to the extent the complaint can be read to assert a procedural due-process claim, it fares no better. "The essentials of procedural due process comprise notice of the charges and a reasonable chance to meet them." *Amsden v. Moran*, 904 F.2d 748, 753 (1st Cir. 1990). Here, it is undisputed that plaintiff received notice of the recommendation to terminate him, and that he was given the opportunity to present witnesses and evidence, and testify—if he so chose—at a hearing. (Docket No. 48 at 10). In addition, after he received an unfavorable decision, he exercised his arbitration rights, and the matter was arbitrated over a two-year period. (*Id.* at 14; Docket No. 42-1 at 2).

### B. State-Law Claims

#### 1. Legal Standard

"Under Massachusetts law, public employees are immune from suit for negligent acts performed within the scope of their official duties." *Roberts v. Town of Bridgewater*, 2015 WL 4550783, at *3 (D. Mass. July 28, 2015) (citing Mass. Gen. Laws ch. 258, § 2; *Breault v. Chairman of Bd. of Fire Comm'rs of Springfield*, 401 Mass. 26, 35 (1987)). "Instead, public employers maintain liability for the negligent acts of public employees committed within the scope of their employment." *Id.* (citing Mass. Gen. Laws ch. 258, § 2; *Parker v. Chief Just. for Admin. & Mgmt. of Trial Ct.*, 67 Mass. App. Ct. 174, 178 (2006)). A public employer is not liable, however, for the intentional torts of its employees. *See* Mass. Gen. Laws ch. 258, § 10(c) (Massachusetts Tort Claims Act does not apply to "any claim arising out of an intentional tort, including . . . intentional mental distress, . . . libel, slander, . . . interference with advantageous relations or interference with contractual relations"); *see also MacLean v. Delinsky*, 407 Mass. 869, 878 n.6 (1990) (same).

Accordingly, summary judgment will be granted to the City on the claims for improper interference with contractual relationship (Count 2), improper interference with advantageous business relationship (Count 3), and intentional infliction of emotional distress (Count 4), as those counts allege intentional torts for which the City cannot be found liable.

In addition, to the extent the complaint can be read to assert those counts—as well as Count 7, the defamation count—against Mayor Curtatone, Chief Fallon, or Captain Cotter in their official capacities, summary judgment will also be granted. *See Nelson v. Salem State Coll.*, 446 Mass. 525, 537 n.9 (2006) ("[I]ndividual defendants in their official capacities are immune from intentional tort claims . . . .").

The remaining counts against the City, therefore, are the claims for wrongful termination

in violation of public policy (Count 5) and negligent infliction of emotional distress (Count 6). To the extent the complaint asserts claims against Curtatone, Fallon, and Cotter in their individual capacities, all state-law counts remain.  Each will be addressed in turn.

### 2.      Improper Interference (Counts 2 and 3)

"To make a successful claim for intentional interference with advantageous relations, a plaintiff must prove that (1) he had an advantageous relationship with a third party (e.g., a present or prospective contract or employment relationship); (2) the defendant knowingly induced a breaking of the relationship; (3) the defendant's interference with the relationship, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions." *Blackstone v. Cashman*, 448 Mass. 255, 260 (2007).[10]

"The improper motive required by the torts is actual malice: 'a spiteful, malignant purpose, unrelated to the legitimate corporate interest.'" *Comeau v. Town of Webster*, 881 F. Supp. 2d 177, 190 (D. Mass. 2012) (quoting *Wright v. Shriners Hosp. for Crippled Child.*, 412 Mass. 469, 476 (1992)).

Curtatone, Fallon, and Cotter have moved for summary judgment on Counts 2 and 3 on the ground that "it is not possible for a jury to infer an improper motive or means on the supported facts in the record."  However, "[c]ertain situations lend themselves to proof of malice in the context of a tortious interference claim, such as a valid claim for unlawful discrimination and unlawful retaliation." *Bennett v. City of Holyoke*, 230 F. Supp. 2d 207, 229 (D. Mass. 2002), *aff'd,* 362 F.3d 1 (1st Cir. 2004).  "Because plaintiff['s] § 1983 . . . retaliation claims still stand with respect to [Curtatone], [Fallon], and [Cotter], the tortious interference claims with respect to

---

[10] Count 2 asserts a claim of improper interference with a contractual relationship, while Count 3 alleges improper interference with an advantageous business relationship.  "[T]he notable difference between the two torts is the existence of a contract." *Comeau v. Town of Webster*, 881 F. Supp. 2d 177, 190 (D. Mass. 2012).  Because that difference is not the subject of dispute here, the Court will analyze the two counts together.

12

these individual defendants will stand as well." *See id.*

Accordingly, summary judgment will be denied on Counts 2 and 3 as to Curtatone, Fallon, and Cotter in their individual capacities.

### 3. Intentional Infliction of Emotional Distress (Count 4)

To succeed on a claim for intentional infliction of emotional distress under Massachusetts law, a plaintiff must prove "(1) that the defendant either intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the conduct caused the plaintiff emotional distress; and (4) that the emotional distress was severe and of a nature that no reasonable person could be expected to endure it." *Hussain v. Hosking*, 2016 WL 696095, at *3 (D. Mass. Feb. 19, 2016) (citing *Agis v. Howard Johnson Co.*, 371 Mass. 140, 144-45 (1976)).

"Conduct is 'extreme and outrageous' only if it is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Lozano v. Suffolk Superior Ct.*, 2015 WL 5684071, at *4 (D. Mass. Sept. 28, 2015) (quoting *Foley v. Polaroid Corp.*, 400 Mass. 82, 99 (1986)). Recovery for an IIED claim generally "requires more than 'that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice" or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.'" *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 195 (1st Cir. 1996) (quoting *Foley*, 400 Mass. at 99).

Plaintiff contends that "[l]ying under oath, intentional deviation from standard procedure, and subsequent slanderous comments designed to humiliate and embarrass [him] both personally and professionally, amount to extreme and outrageous conduct . . . ." (Docket No. 47 at 13). Drawing all inferences in plaintiff's favor, however, the facts here do not rise to the level of

13

extreme and outrageous conduct. Accordingly, summary judgment will be granted as to the IIED claim.

### 4. **Wrongful Termination (Count 5)**

Under Massachusetts law, "an at-will employee has a cause of action for wrongful discharge if the discharge is contrary to public policy." *DeRose v. Putnam Mgmt. Co.*, 398 Mass. 205, 210 (1986). However, "[i]t is well-established that such a claim is barred for employees covered by a collective bargaining agreement." *Brothers v. Town of Millbury*, 2014 WL 4102436, at *10 (D. Mass. Aug. 14, 2014); *see also Cullen v. E.H. Friedrich Co.*, 910 F. Supp. 815, 821 (D. Mass. 1995) ("Allowing employees governed by a CBA to assert an independent, common law claim of wrongful discharge would . . . 'deprive employer and union of the ability to establish a uniform and exclusive method for orderly settlement of employee grievances.'" (quoting *Azzi v. Western Elec. Co.*, 19 Mass. App. Ct. 406, 410 (1985))). Neither party has raised the issue of the possible application of the collective bargaining agreement. Accordingly, summary judgment will not be granted on that basis.

Instead, defendants have moved for summary judgment on the grounds that "there are no facts in the record that could form the basis of a termination in violation of public policy," and that without "evidence to support [plaintiff's] theory that anything but his own actions led to his termination, this claim fails."[11]

As noted, however, plaintiff has produced evidence that raises a dispute of material fact concerning whether he was retaliated against for speaking out on issues of public corruption within the SPD. Accordingly, summary judgment will be denied as to Count 5.

---

[11] As to the City, defendants further contend that wrongful termination is an intentional tort for which the City is immune from liability. However, at least one Massachusetts court has held that claims for wrongful termination are "not to be tested by the Massachusetts Tort Claims Act." *Holden v. Worcester Hous. Auth.*, 1995 WL 809991, at *2 (Mass. Super. July 24, 1995).

### 5. Negligent Infliction of Emotional Distress (Count 6)

Under Massachusetts law, in order to recover for negligent infliction of emotional distress, a plaintiff must prove the following: "(1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case." *Payton v. Abbott Labs*, 386 Mass. 540, 557 (1982).

Defendants have moved for summary judgment on the ground that the claim for negligent infliction of emotional distress is barred by the Massachusetts Tort Claims Act. As noted, "[u]nder Massachusetts law, public employees are immune from suit for negligent acts performed within the scope of their official duties." *Roberts*, 2015 WL 4550783, at *3. "Instead, public employers maintain liability for the negligent acts of public employees committed within the scope of their employment." *Id.*

Retaliatory acts, however, are generally not considered to be acts taken within the scope of employment. *See LeGoff v. Trustees of Bos. Univ.*, 23 F. Supp. 2d 120, 130 (D. Mass. 1998) ("Nor can unlawful acts—including . . . retaliation—be considered to be within the scope of a supervisor's duties."); *but see Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 757 (1998) ("There are instances, of course, where a supervisor engages in unlawful discrimination with the purpose, mistaken or otherwise, to serve the employer.").

In any event, however, summary judgment will be granted on Count 6, as there is no evidence in the record (or allegations in the complaint) concerning the required fourth element—physical harm with objective symptoms. *See Sullivan v. Bos. Gas Co.*, 414 Mass. 129, 809-10 (1993) ("A successful negligent infliction of emotional distress claim . . . must do more than allege 'mere upset, dismay, humiliation, grief and anger.'" (quoting *Corso v. Merrill*, 119 N.H.

647, 653 (1979))).[12]

### 6. Defamation (Count 7)

#### a. Legal Standard

"Modern defamation law is a complex mixture of common-law rules and constitutional doctrines." *Pan Am. Sys., Inc. v. Atlantic Ne. Rails & Ports, Inc.*, 804 F.3d 59, 64 (1st Cir. 2015). Under Massachusetts law, "[d]efamation is the publication, either orally or in writing, of a statement concerning the plaintiff which is false and causes damage to the plaintiff." *Yohe v. Nugent*, 321 F.3d 35, 39-40 (1st Cir. 2003) (citing *McAvoy v. Shufrin*, 401 Mass. 593, 597 (1988)).

To establish a defamation claim, a plaintiff must satisfy four elements. First, to be "defamatory," the statement must "hold the plaintiff up to contempt, hatred, scorn, or ridicule or tend to impair his standing in the community, at least to his discredit in the minds of a considerable and respectable class in the community." *Id.* at 40 (quoting *Tartaglia v. Townsend*, 19 Mass. App. Ct. 693, 696 (1985)) (internal quotation marks omitted); *Phelan v. May Dep't. Stores Co.*, 443 Mass. 52, 56 (2004). Second, to satisfy the "publication" element, "the statement must have been [made] to at least one other individual other than the one defamed." *Yohe*, 321 F.3d at 40 (citing *Brauer v. Globe Newspaper Co.*, 351 Mass. 53, 56 (1966)); *Phelan*, 443 Mass. at 56. "Third, where the speech is a matter of public concern, a defamation plaintiff must prove not only that the statements were defamatory, but also that they were false." *Yohe*, 321 F.3d at 40 (citing *Dulgarian v. Stone*, 420 Mass. 843, 847 (1995)).[13] Fourth, "the plaintiff

---

[12] As to the claim against the City, summary judgment on this claim is warranted for the additional reason that the complaint does not allege that plaintiff properly presented the negligence claim as required under Massachusetts law. *See Doe v. Cambridge Pub. Schs.*, 101 Mass. App. Ct. 482, 490 (2022) (dismissing claim for negligent infliction of emotional distress for lack of adequate presentment).

[13] That additional element in cases involving matters of public concern derives from First Amendment principles. *See Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986) (holding that, where the speech

must show that he suffered special damages and must set forth these damages specifically." *Id.* (citing *Lynch v. Lyons*, 303 Mass. 116, 119 (1939)).  However, "the imputation of a crime is defamatory per se, requiring no proof of special damages." *Phelan*, 443 Mass. at 56.

"On the constitutional side, the Supreme Court—reading the First Amendment (made binding on the states through the Fourteenth)—'has hedged about defamation suits' with lots of 'safeguards designed to protect a vigorous market in ideas and opinions.'" *Pan Am. Sys.*, 804 F.3d at 65 (quoting *Desnick v. American Broad. Co.*, 44 F.3d 1345, 1355 (7th Cir. 1995)); *see also McKee v. Cosby*, 874 F.3d 54, 60 (1st Cir. 2017) (noting that these First Amendment safeguards are "[s]uperimposed on any state's defamation law").  First, as already noted, in cases involving matters of public concern, the plaintiff bears the burden of showing that the communications at issue are false.  *See Philadelphia Newspapers*, 475 U.S. at 776.  Second, because statements must be false to be actionable, "defamatory statements are not punishable unless they are capable of being proved true or false." *Pan Am Sys.*, 804 F.3d at 65.  Accordingly, subjective statements and statements of opinion are protected under the First Amendment as long as they do not "present[] or impl[y] the existence of facts which are capable of being proven true or false." *Levinsky's, Inc. v. Wal-Mart Stores, Inc.*, 127 F.3d 122, 127 (1st Cir. 1997); *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 18-19 (1990).  Finally, "where a statement of 'opinion' on a matter of public concern reasonably implies false and defamatory facts regarding public figures or officials, those individuals must show that such statements were made with knowledge of their false implications or with reckless disregard of their truth," or, in other

---

at issue is a matter of public concern, there is a "constitutional requirement that the plaintiff bear the burden of showing falsity").  That constitutional requirement has superseded traditional common-law rules that truth was an affirmative defense and that the defendant, therefore, bore the burden of proving the statement was true.  *See id.*; *Pan Am Sys.*, 804 F.3d at 66.

words, with "actual malice." *Milkovich*, 497 U.S. at 20.  "[P]olice officers . . . are 'public officials' for purposes of defamation." *Rotkiewicz v. Sadowsky*, 431 Mass. 748, 752 (2000).

According to the complaint, Curtatone and Fallon "took the opportunity of [plaintiff's] termination to release their personal invective toward [him] by providing the Boston Globe and other media sources with written statements and quotes designed to hold [him] up to scorn and ridicule in his community and among family and friends."  (Compl. ¶ 98).

### b. David Fallon

As to Fallon, the complaint only challenges statements that he allegedly made at DiFronzo's disciplinary hearing before Berry, and that were subsequently summarized in an April 2018 Boston Globe article.  (*See* Compl. ¶¶ 115, 117; Answer ¶ 115).[14]  Any testimony that he gave at that disciplinary hearing was absolutely privileged, however, and cannot form the basis of a defamation claim.  *See Fisher v. Lint*, 69 Mass. App. Ct. 360, 365-70 (2007) (holding that absolute privilege applied to sergeant's statements concerning disciplinary investigation of state trooper); *see also Bassichis v. Flores*, 490 Mass. 143, 152 (2022) ("[T]he litigation privilege allows witnesses to testify without fear of civil liability, thereby encouraging full disclosure.").  Accordingly, summary judgment will be granted as to the claim against Fallon on Count 7.

### c. Joseph Curtatone

It appears that the only statement made by Curtatone that the complaint specifically challenges is a statement attributed to him in a May 10, 2018 Boston Globe article, which was published two days after Berry concluded "that just cause exist[ed] for the Mayor to impose

---

[14] It does not appear that the April 30, 2018 article or the transcripts of the disciplinary hearing were submitted to the Court.

further discipline on Det. DiFronzo, up to and including terminating [his] employment as a Somerville Police Officer." (*See* Compl. ¶ 112; Docket No. 42-4 at 44). The article stated:

> "The residents of Somerville must have confidence that the sworn men and women of the Somerville Police Department will not only protect public safety but also discharge their duties with the utmost integrity," Curtatone said in a statement. "As mayor, I have a duty to maintain that excellence by holding accountable officers who violate the department's standards of conduct."

(Docket No. 42-16 at 3). Defendants contend, and the Court agrees, that that statement "is simply not defamatory."[15] Accordingly, summary judgment will be granted as to the claim against Curtatone on Count 7.

## IV. Conclusion

For the foregoing reasons, defendants' motion for summary judgment is

1. GRANTED on Count 1 as to the claims under the Fifth and Fourteenth Amendments, and DENIED as to the First Amendment retaliation claim;

2. GRANTED on Counts 2 and 3 as to the City, and to Curtatone, Fallon, and Cotter in their official capacities, and DENIED as to Curtatone, Fallon, and Cotter in their individual capacities;

3. GRANTED on Count 4;

4. DENIED on Count 5;

5. GRANTED on Count 6; and

6. GRANTED on Count 7.

---

[15] In his opposition to the motion for summary judgment, and at the hearing on that motion, plaintiff did not explain how that statement was defamatory, but focused instead on statements made after the filing of the complaint. As plaintiff did not amend his complaint to include those challenged statements, they will not be considered.

**So Ordered.**

                                                                /s/ F. Dennis Saylor IV
                                                                F. Dennis Saylor IV
Dated: August 28, 2023                                   Chief Judge, United States District Court