UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No.: 21-10867-FDS

```
_____
                                 )
DANTE A. DIFRONZO,               )
        Plaintiff,               )
                                 )
v.                               )
                                 )
CITY OF SOMERVILLE,              )
MAYOR JOSEPH CURTATONE,          )
CHIEF DAVID FALLON, and          )
CAPTAIN BERNARD COTTER           )
        Defendants.              )
_____)
```

## JOINT PRETRIAL MEMORANDUM

Pursuant to the Court's Order Setting Case for Trial (ECF No. 53), the parties hereby submit their Joint Pre-Trial Memorandum. The remaining claims in this case according to the Court's Summary Judgment Decision [ECF No. 51], issued August 28, 2023, are as follows:

(1) A constitutional claim against the individual defendants brought pursuant to 42 U.S.C. Section 1983, alleging retaliation under the First Amendment (Count I);

(2) A claim for intentional interference with contractual relations and intentional interference with advantageous business relations against the individual defendants in their individual capacities (Counts II and III);

(3) A claim for wrongful termination in violation of public policy (Count V).

**A. Concise Summary of the Expected Evidence**

*Plaintiff*

The Plaintiff expects that the evidence will show that:

The Plaintiff, Dante DiFronzo was born and raised in Somerville. He has lived in Somerville for more than fifty-one years. Because of his long-standing personal and familial

relationship with the City of Somerville, the Defendants' wrongful termination of the Plaintiff has had a devastating impact on both the Plaintiff and his family. The Plaintiff was hired as a police officer for the City of Somerville on November 14, 2008. He entered the Boston Police Academy on December 8, 2008 and completed his academy training in July 2009. The Plaintiff initially worked within the patrol division for approximately three years and was involved in a critical incident early in his career. As a result of the Plaintiff's response to this incident he received a Medal of Honor, Medal of Valor, Purple Heart, and life-saving medal from the Somerville Police Department (Hereinafter "SPD").

The Plaintiff was assigned to "CID" Criminal Investigations Division in October 2011. Despite the wide-spread use of confidential informants and street sources within the Somerville Detective Bureau, the Defendants did not provide any formal training to the Plaintiff regarding the use of "confidential informants" or "street sources" prior to or during his assignment to the Detective Bureau.

By January 2015, the Plaintiff begun to use "street sources" as an integral part of his job. He had learned to do so from other senior detectives who were routinely using street sources as well. Law enforcement routinely recognizes the distinction between confidential informants and street sources.

Jonathan Machado ("Machado") was a "street source" known to the Plaintiff. The Plaintiff's first encounter with Jonathan Machado occurred in 2013. At that time, Detective DiFronzo was assigned to investigate a breaking and entering at the Central Convenience Store located on Mystic Avenue in Somerville.

Detective DiFronzo investigated and charged Jonathan Machado and his co-conspirator, Jared Hiltz, with breaking and entering in the nighttime and conspiracy after investigating that incident.

In December 2014, Defendant David Fallon approached Detective DiFronzo and advised him of several motor vehicle breaking and entering incidents, one of which had resulted in the theft of a Somerville Police Officer's badge and ballistic vest. Given the importance of the recovery of the badge and ballistic vest, Defendant Fallon specifically asked Detective DiFronzo to utilize his resources in the street and investigate the theft of the Somerville Police Officer's stolen equipment.

Detective DiFronzo subsequently went to Mr. Machado's location, spoke with Mr. Machado and approximately two hours later, Machado produced the stolen badge and ballistic vest. Detective DiFronzo immediately reported his actions regarding the investigation of Machado and recovery of the badge and ballistic vest to Defendant Fallon.

On February 24, 2015, Detective DiFronzo began a lengthy investigation of a home invasion that had occurred at 12 Kilby Street, Apartment #3, Somerville, where a suspect, later identified as Mario Mestanza Moran, entered a home wearing a mask, brandishing a gun, demanding money and marijuana.

Det. DiFronzo read all of the reports, spoke to the officers involved, canvassed the area, looked for cameras, looked for anything out of the ordinary, entered the building, interviewed all of the witnesses as part of his investigation. He recalls it was a nine-plus month investigation and with the assistance of the Boston Fugitive Task Force, the investigation resulted in the arrest of Mario Mestanza Moran.

The Plaintiff had a subsequent conversation with Jonathan Machado on February 28, 2015 and learned that there was another person responsible for the breaking and entering that occurred at 12 Kilby Street, Apartment #3 on February 27, 2015 named Henry Alvarez.

Mr. Machado stated that he was upset with Mr. Alvarez for stealing his "weed" the night before and he intended to cause Alvarez harm. The Plaintiff warned Machado on several occasions not to harm Alvarez because if he did, the Plaintiff stated, "I'll lock you up." At no time did the Plaintiff ever encourage or suggest the use of force by Jonathan Machado against Henry Alvarez, let alone the idea of a home invasion.

On March 2, 2015, a radio call came in for an armed home invasion at 11 Alston Street, Somerville. Det. DiFronzo, Lt. Det. Rymill, and others responded to the scene. Before conducting a canvass of the area, Plaintiff informed Lieutenant Rymill. "LT, I've got a hunch this kid may be involved, this kid, Machado. I have a hunch he may be involved."

Det. DiFronzo was actively investigating Machado and speaking with ADA Santos throughout the process. Det. Hyde assisted Det. DiFronzo in the search warrant application process. Det. Hyde reviewed the August 2015 search warrant and confirmed it was drafted in the manner he advised Det. DiFronzo to draft it, specifically incorporating the incident reports by reference. DiFronzo was fully aware of his communications with Machado, he sought and obtained the warrant, and he is responsible for getting the text extraction into the record.

Detective DiFronzo "authored and had approved two duly vetted search warrants that revealed the contents of the phone, the text messages, so everybody, and I mean everybody, could see it." Despite the knowingly inaccurate conclusions reached in his initial report, Cotter subsequently admitted that as of August 5, 2015, he was aware that Det. DiFronzo was trying to show everything in the phone:

A. He was trying to get the search warrant done for the phone.
Q. Which would have shown everything in the phone?
A. At that time, yes.
Q. Detective DiFronzo was trying to do that?
A. Yes.
Q. He wasn't trying to hide what was on the phone, right?
A. No.
Q. The phone was in evidence?
A. Yes.
Q. He got a search warrant?
A. Yes.
Q. It got issued and he brought it immediately to Sergeant Whalen?

A.  Yes.
Q.  No specific instructions to say, "Don't put parts of this in the record" that you're aware of?
A.  That I'm aware of, yes.
Q.  Right. So as far as you know, all of the evidence suggests that as of August 5th, 2015, Detective DiFronzo's efforts were to put these texts in the official record of this case?
A.  In August, yes.
Q.  But you actually concluded quite to the contrary in your report, didn't you?
A.  Yes. (IV-184 to IV-186 [Cotter]).

Despite the plain language of the search warrant and Cotter's admission, the City still subsequently attempted to, and ultimately did, terminate Plaintiff for his alleged attempt to conceal the text message exchange between himself and Machado. This retaliatory action was taken on the heels of DiFronzo's numerous disclosures to multiple offices of the ongoing corrupt practice of the Defendants.

Based upon the information obtained by the Plaintiff's investigation, including the search warrants he drafted, Jonathan Machado subsequently pled guilty to several offenses including the assault and home invasion upon Mr. Alvarez and is currently incarcerated.

On September 26, 2016, then Captain Michael Cabral received a call from Nicole Allain from the Middlesex County District Attorney's Office ("MDAO") regarding text messages between the Plaintiff and Jonathan Machado obtained from Machado's cell phone as a result of the search warrant drafted by Plaintiff.

On September 29, 2016, Captain Cabral subsequently met with the Plaintiff and advised him he would be put on paid administrative leave and that he (Cpt. Cabral) would be conducting an investigation of the matter with a set of written questions. At that time Cabral suggested to the Chief that the Grievant be put on leave despite no investigation having been conducted.

There is no evidence whatsoever that the MDAO conducted any investigation into improper conduct on the part of Plaintiff. During the six months between September 2016 to March 2017, no record exists or has been produced as to what, if any, "investigation" was ever conducted by the MDAO or the Defendants. To this date, the Defendants have produced no evidence as to what the MDAO did to "investigate" the Plaintiff.

On May 31, 2017, when Chief Fallon sent Det. DiFronzo a "Disciplinary Letter" suspending Det. DiFronzo without pay for five days and advising him that he recommended to Mayor Curtatone he terminate Plaintiff's employment.

Chief Fallon was making the recommendation to terminate Plaintiff's employment despite the SPD's failure to conduct any independent investigation. Plaintiff, through counsel, requested than an investigation be done and as a result no decision was made regarding Plaintiff's termination.

On October 30th, 2017 the Plaintiff delivered a letter to Mayor Curtatone, complaining about the issues of corruption within the Somerville Police Department.

On November 27, 2017 the Plaintiff delivered correspondence to Mayor Curtatone regarding issues of what he reasonably believed to involve public corruption. In his correspondence, Plaintiff identified what he believed to be ongoing unethical and/or illegal conduct including, but not limited to, a direct conflict of interest involving Defendant Curtatone.

On December 7, 2017, the Plaintiff delivered correspondence to the Public Corruption Unit of the Massachusetts Attorney General's Office stating his reasonable belief that the Defendants had engaged in issues of public corruption.

Prior to his correspondence to the Public Corruption Division, the Plaintiff had both verbally, and in writing, stated similar allegations of what he reasonably believed to be corruption and unethical political favoritism on the part of the Defendants Curtatone and Fallon.

Plaintiff had previously voiced his concerns, on numerous occasions, regarding the promotion of Somerville Police Officers with prior criminal as well as disciplinary histories, including Defendant Curtatone's first cousin, former Somerville Police Officer Alex Capobianco.

The Plaintiff's actions, speech and allegations embarrassed the Defendants and cast the Plaintiff in a negative light with both Defendants, who sought to retaliate against the Plaintiff for speaking out publicly on these issues.

Defendant Cotter's flawed investigation was fully supported by Defendants Fallon and Curtatone, despite the fact that other members of the Somerville Police Department possessed clearly exculpatory information regarding the true basis for the encounter between Mr. Machado and Mr. Alvarez near the Somerville Public Library.

Cotter testified that a thorough and complete internal affairs investigation includes: (1) interviewing (versus speaking to) all of the witnesses; (2) reviewing all police reports and witness reports; (3) reviewing all physical evidence; (4) reviewing video and audio evidence; and (5) reviewing any other evidence that could contribute to the investigation. Cotter testified that important witnesses should be formally interviewed.  He also testified that such interviews should be recorded, to protect the integrity of the investigation.

Despite the above, in this case, Cotter did not interview a single witness except for Det. DiFronzo who had to insist he be interviewed

Defendant Cotter's shoddy "investigation" included information he knew to be untrue and was done with the deliberate purpose of retaliating against Plaintiff for his repeated complaints about ongoing corruption within the SPD and the City. The Plaintiff avers that Captain Cotter intentionally ignored exculpatory evidence and potential sources of information, including known witnesses to the underlying incident involving Jonathan Machado and Henry Alvarez.

Defendant Cotter did not amend or supplement his report after ADA Kate Kleimola called him on February 8, 2018 (the day before the Appointing Authority hearing) to tell him that his

report summary of their conversation was incorrect and that the delay that Cotter concluded was "intentional" and nefarious was not, in fact, a delay at all.

Cotter did not offer the details of this February 8 conversation with Kleimola when he testified at the Appointing Authority hearing or in his direct examination testimony in this Arbitration.  He presented the conclusions of his report as written in his report as if his conversation with Kleimola never occurred. In doing so he withheld exculpatory information and, on cross examination, he agreed "I was wrong."

The Mayor, six months after receiving complaints from Plaintiff that the Mayor had engaged in unethical conduct, upheld the Chief's five-day suspension and terminated Det. DiFronzo.

The Union timely appealed to the American Arbitration Association. Detective Dante DiFronzo, through the Somerville Police Employees' Association, participated in fifteen days of arbitration hearing regarding the termination of his employment from the Somerville Police Department.

During the course of the arbitration Cotter confirmed that he knowingly presented false information during the Appointing Authority testimony. The Arbitrator concluded his findings by stating:

"The City did not have just cause to terminate the Grievant. The Grievant shall be reinstated without back pay or benefits, but without loss of seniority. The period of his absence will be reflected as a suspension in his personnel file. The City, as soon as practical, but not later than thirty (30)calendar days from the date of this decision, shall reinstate the Grievant to his prior position."

Immediately following Plaintiff's 'reinstatement' Defendants Plaintiff was immediately placed on paid administrative leave. Defendant's contend that the placement of Plaintiff on administrative leave was as a result of receiving a new Brady letter from the MDAO. However, Chief Femino testified that prior to receiving any subsequent Brady letter from the MDAO's office, the City was already planning on refusing to reinstate Plaintiff. Defendant's actions highlight their retaliatory animosity towards Plaintiff. Furthermore, Chief Femino never read the arbitrator's decision prior to making the determination to place Plaintiff on administrative leave under the belief that Plaintiff was unable to perform his duties as a Somerville police officer because of the Brady Letter.

The evidence will show that Det. DiFronzo was called as a witness in Commonwealth v. Ngumba, after the issuance of the MDAO's original Brady letter.  He was not questioned, impeached, or disqualified to provide testimony in any manner as a result of the Brady letter or for any of the allegations identified in the Brady letter.

Additionally, the evidence will show that Somerville officers Chris Gomes, Gravin Guillien, Ariel Collazo, Michael Kiely, William Carr, Michael Kennelly, Leo Martini, Alex Capobianco and Paul Duffy, are all police officers who were accused of or actually charged with

a crime and who continued to work as Somerville Police officers after being charged.  Chief Fallon was the Chief when Paul Duffy and Alex Capobianco were charged.

Somerville officers Michael Silva, Michael Ameral, Ariel Collazo, Marcos Frietas, Gravin Guillien, Yvon Jean-Jacques, Michael Kiely, Samuel Stanford, John Vozella, and Paul Duffy each have or had Brady letters. Ameral worked for over a decade with a Brady letter, including work involving the prosecution of cases against criminalsMichael Kiely has worked with a Brady letter since 2003, including work in the detective's bureau. Ariel Collazo worked with a Brady letter for seven years, including work in the narcotics division. Yvon Jean-Jacques has worked with a Brady letter since 2013. Very clearly, having a Brady letter does not disqualify one from employment.

To this day, Plaintiff has not been reinstated to his position with the Police Department.

<u>*Defendants*</u>

The advocacy piece submitted by the Plaintiff, *above*, demonstrates a fundamental misunderstanding of the legal issues that remain in this case and of the claims that were actually pleaded in the Plaintiff's Complaint.

The evidence will show that Mr. DiFronzo admitted to having provided the address of a criminal suspect to a street source, the latter who had conveyed to Mr. DiFronzo via text message an intent to harm the suspect. The evidence will show that, based on the information shared by Mr. DiFronzo, the street source located the suspect at or near the address provided and attacked him with a machete. The evidence will also show that Mr. DiFronzo delayed in disclosing his involvement in the attack to the proper authorities, including the Middlesex District Attorneys' Office ("MDAO"), claiming that he did not think that his text messages with the street source held any "evidentiary value." The texts were ultimately extracted from the relevant cell phones.

The evidence will further show that, based on the MDAO's investigation, the former Chief of Police recommended that Mr. DiFronzo be terminated. Nonetheless, Mr. DiFronzo insisted that the Department investigate on its own, despite it already having been provided the relevant information from the Middlesex District Attorneys' Office. The evidence will show that Mr. DiFronzo also began appealing to the Mayor to intervene, claiming bias in the City's investigation

(which DiFronzo initiated through his union), among other unsubstantiated complaints. After the Department's investigation concluded, the Chief of Police renewed his recommendation for termination. The evidence will show that Mr. DiFronzo's "letters" utterly fail to qualify as protected under the First Amendment.

The evidence will show that the termination matter was heard by a neutral hearing officer appointed by the Mayor, Attorney Peter Barry, and that the hearing officer agreed that termination was appropriate based on the evidence. Mr. DiFronzo was afforded the right to counsel at the hearing and chose not to testify. The Mayor adopted the hearing officer's recommendation, as he had done regularly as a matter of course in his role as the appointing authority. The evidence will eviscerate any supposed causal link between DiFronzo's letters and the ultimate decision to terminate.

The Defendants maintain that the issues before the court in this case, based on what was pleaded, are limited to this time period.

For purposes of background, the evidence will show that Mr. DiFronzo grieved the termination decision, and an arbitrator ordered him back to work but without any backpay for an unprecedented amount of time (3 years). However, the MDAO, after and *in response to the arbitration decision*, amended its *Brady* notice as to Mr. DiFronzo to expressly state that he will <u>not</u> be called as a witness by the MDAO barring "extraordinary circumstances." This language appears in no other *Brady* notices involving Somerville officers. A new Chief of Police and City administration evaluated the impact of the MDAO's decision on DiFronzo's continued employment and placed him on *paid* administrative leave while the cross appeal of the arbitrator's decision to reinstate Mr. DiFronzo continues (if the award is ultimately vacated in full and the original decision to terminate upheld, it moots the issue). Notably, a Superior Court judge has

already decided that the impact of the revised position by the MDAO was <u>not</u> before the arbitrator, and also vacated and remanded the arbitration decision to the arbitrator for further factual considerations that bear on issues of public policy that are undoubtedly triggered by reinstating Mr. DiFronzo. As the issue with the MDAO's subsequent *Brady* letter has not been grieved under the CBA, nor has any action been taken against Mr. DiFronzo in light of that letter (by agreement of the parties, a hearing on whether the language disqualifies DiFronzo from serving as a law enforcement officer was postponed until the arbitration appeal process plays out), it cannot form the basis of any claim in this lawsuit.

**B.  Facts Established By Pleadings or Stipulation**

1.  On September 29, 2016, the City of Somerville placed the Plaintiff, then a detective with the Somerville Police Department, on paid administrative leave subject to an investigation into alleged misconduct.

2.  On May 8, 2018, the Plaintiff was terminated.

**C.  Contested Issues of Fact**

As is evident from the parties' respective statements of the evidence, above, they disagree on nearly all of the material facts left in this case, including the facts surrounding the termination of the Plaintiff and the motivation for said termination.

The two central questions left in this case are (1) whether the termination was retaliatory under the First Amendment and/or in violation of public policy and (2) whether the three individual defendants intentionally interfered with Mr. DiFronzo's employment for retaliatory and/or unlawful reasons (governed by the common law as it pertains to the tort of interference with contractual relations).

The parties reserve their right to further narrow the issues as part of their pre-trial filings.

**D.  Jurisdictional Questions**

None.

**E.  Questions Raised By Pending Motions**

None at this time.

**F.  Issues of Law**

The parties agree that the claims remaining in this case for trial are:

(1) A constitutional claim against the individual defendants brought pursuant to 42 U.S.C. Section 1983, alleging retaliation under the First Amendment (Count I);

(2) A claim for intentional interference with contractual relations and intentional interference with advantageous business relations against the individual defendants in their individual capacities (Counts II and III).

(3) A claim for wrongful termination in violation of public policy (Count V).

Thus, the two central questions left in this case are (1) whether the termination was retaliatory under the First Amendment and/or was in violation of public policy and (2) whether the three individual defendants intentionally interfered with Mr. DiFronzo's employment for retaliatory and/or unlawful reasons (governed by the common law as it pertains to the tort of interference with contractual relations).

The parties reserve their right to further narrow the issues as part of their pre-trial filings.

**G.  Requested Amendments to Pleadings**

None.

**H.  Any Additional Matters**

The Defendants will move as part of its pre-trial submissions to properly limit the inquiry of this trial to the Mr. DiFronzo's termination and that decision. The other issues that postdate that decision were not only not encompassed by the pleadings but are the subject of an open cross

appeal in Superior Court, and/or have not been exhausted as required under the relevant CBA and, thus, cannot be litigated here.

If the Plaintiff does not agree to voluntary dismissal, the Defendants will also move as part of their pre-trial submissions for dismissal of the wrongful termination state law claim as barred by the applicable CBA. This is a straightforward legal question identified in the Court's summary judgment decision.

## I.   Anticipated Length of Trial

The parties expect the trial to last approximately two weeks.

[*signatures on the next page*]

Respectfully submitted,
The Defendants,
By their attorneys,

*/s/ Michael Stefanilo, Jr.*
Leonard H. Kesten, BBO# 542042
Michael Stefanilo, Jr., BBO #684500
BRODY, HARDOON, PERKINS & KESTEN, LLP
265 Franklin Street, 12th Floor
Boston, MA 02110
(617) 880-7100
mstefanilo@bhpklaw.com
lkesten@bhpklaw.com


The Plaintiff,
By his attorneys,

*/s/ Jared S. Burke*
Timothy M. Burke, BBO# 065720
Jared S. Burke, BBO# 677851
Law Office Of Timothy M. Burke
117 Kendrick Street, Suite 300
Needham, MA 02494
781-455-0707
tburke@timburkelaw.com
jsburke@timburkelaw.com


Dated:  November 1, 2023

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document was filed through the ECF system and will therefore be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent this day to those participants indicated as non-registered participants.

*/s/ Michael Stefanilo, Jr.*
Michael Stefanilo, Jr., BBO #684500

Dated:  November 1, 2023