UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DANTE DiFRONZO<br><br>                    Plaintiff,<br><br>          v.<br><br>CITY OF SOMERVILLE, ET AL.,<br><br>                    Defendants. | CIVIL ACTION<br>NO. 1:21cv10867-FDS |

**MEMORANDUM IN SUPPORT OF EMERGENCY MOTION OF
MIDDLESEX ASSISTANT DISTRICT ATTORNEYS NICOLE ALLAIN
AND DANIEL HARREN TO QUASH PLAINTIFF'S TRIAL SUBPOENA**

The plaintiff has issued a subpoena to Middlesex Assistant District Attorney Nicole Allain ("ADA Allain"), who is the Chief of the Superior Court Trial Team for the Cambridge Region of Middlesex County, and Middlesex Assistant District Attorney Daniel Harren, who is a Superior Court prosecutor ("ADA Harren" and, collectively, "the ADAs"), to compel their testimony at the trial of this case. The subpoenas should be quashed for at least two reasons. First, the plaintiff has not met the threshold showing that is required to compel the testimony of a Massachusetts prosecutor. Second, it is anticipated that the plaintiffs will seek disclosure of privileged or other protected matter where no exception or waiver applies. See Fed. R. Civ. P. 45(c)(3)(A)(iii) Copies of Subpoenas are attached as Exhibit A and B.

Among the privileges shielding the ADAs potential testimony are the work-product doctrine, the deliberative process privilege and the law enforcement investigative privilege, as well as the proscription against disclosure of Criminal Offender Record Information and grand

jury information. In the alternative, if this Court denies the motion to quash, the ADAs respectfully request that this Court enter a protective order to prevent inappropriate and unnecessary intrusions into protected information, and that an attorney for the Office of the Middlesex District Attorney ("MDAO") be permitted to be present during direct and cross-examination to assert objections to any questions that might require disclosure of such information.

## RELEVANT BACKGROUND

On May 11, 2021, the plaintiff initiated this civil action in Middlesex Superior Court by filing a seven-count complaint against the City of Somerville, its then mayor and two senior police officials. Complaint, Doc. No. 1, Ex. 1. The complaint alleged violations of 42 U.S.C. § 1983, as well as six tort claims arising under Massachusetts common law.  Id.  The plaintiff sought redress based upon events surrounding his termination as a police officer for the City of Somerville.  Id. Neither ADA Allain, ADA Harren nor the Office of the Middlesex District Attorney is a party to this case. Id. On May 25, 2021, defendants removed this case to federal court. Notice of Removal, Doc. 1.

ADA Allain's name appears in only five of the 161 paragraphs of the complaint, and then only in connection with communications with other persons who could presumably testify as witnesses. Complaint, Doc. 1, Ex. 1, ¶¶ 56-59, 108. Similarly, ADA Harren's name appears in only one of the 161 paragraphs of the complaint, id., ¶76, and likewise only in connection with communications with someone who could presumably testify as a witness.

On October 4, 2024, over three years after the plaintiff initiated this action and two and one half weeks before trial, plaintiff's counsel issued subpoenas directing ADA Allain and ADA Harren to testify at the trial of this case.[1]  The subpoenas were left in the reception areas of MDAO's main office in Woburn. The subpoenas request the ADAs' testimony on October 22, 2024 at 9:00 AM.[2]

## ARGUMENT

This Court should quash the subpoena. The plaintiffs have not demonstrated the type of extraordinary circumstances that could warrant the compelled testimony of a Massachusetts prosecutor. Further, the testimony that the plaintiff is expected to seek will implicate certain well-established and longstanding federal and state privileges and protections. As explained below, such privileges and protections apply when a civil litigant seeks testimony from a prosecutor on matters concerning charging decisions and the internal deliberative processes that underlie steps in the litigation of a criminal case, as well matters concerning investigative techniques.

---

[1] With so little notice prior to trial, MDAO was placed at a distinct disadvantage because of lack of notice as to what type of information the plaintiff would be seeking from the ADAs and now, at the last minute, the ADAs have been subpoenaed with no explanation as to why their testimony is needed or what it would involve.

[2] Upon learning of the subpoenas, MDAO requested representation from the Office of the Massachusetts Attorney General ("AGO") in connection with this matter.  On October 10, 2024, the AGO declined representation, citing a conflict of interest.

**I. Enforcing The Subpoena Would Be At Odds With The Principle That Compelling Testimony From A Massachusetts Prosecutor Is Disfavored.**

Forcing the ADAs to testify would run afoul of the general principle disfavoring compelled testimony from prosecutors.  Before a party resorts to the "extraordinary" means of calling a member of the prosecution team as a witness, he or she "must first make a satisfactory offer of proof as to the need for the prosecutor's testimony."  Commonwealth v. Blaikie, 375 Mass. 601, 608-609 (1978).  Testimony may not be compelled from the prosecution team unless the information is unavailable from other sources.  Id. at 609; Church of Scientology of Boston v. IRS, 138 F.R.D. 9, 12-13 (D. Mass. 1990); Gomez v. City of Nashua, 126 F.R.D. 432, 435 (D. N.H. 1989).  Massachusetts and federal courts have deemed this protection from compelled testimony so important as to extend it to other members of the prosecution team, including victim-witness advocates. See, e.g., Commonwealth v. Liang, 434 Mass. 131, 135 (2001).

The plaintiff has not demonstrated any need for the ADA's testimony or that such testimony is unavailable from other sources. See Blaikie, 375 Mass. at 608-610 (defendant failed to demonstrate that the prosecutor possessed personal knowledge of relevant facts which could not be elicited by means other than to resort to the extraordinary decision of calling the prosecutor to testify). For these reasons, the extraordinary measure of compelling the ADAs to testify is unwarranted and the subpoenas should be quashed. Id.  Furthermore, to the extent the plaintiff seeks to question the ADAs regarding investigative actions taken, or charging decisions that MDAO made in connection with the events described in the complaint, these areas are protected by the privileges described *infra*, at section II. Further, the plaintiff has not shown, and cannot show, a persuasive basis to conclude that the ADAs have unique personal and appropriately ascertainable knowledge relevant to this litigation that cannot be obtained through other sources.

**II. The Federal Rules Of Civil Procedure Offer Protection For Privileged And Protected Matter.**

Federal Rule of Civil Procedure 45(d)(3) provides that a federal court "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies." With respect to privileges, the Federal Rules of Evidence state:

> The common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege unless any of the following provides otherwise:
>
> - the United States Constitution;
> - a federal statute; or
> - rules prescribed by the Supreme Court.
>
> But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.

Fed. R. Evid. 501.

**A. The Subpoena Seeks Testimony That Is Protected By The Attorney Work-Product Doctrine And The Deliberative-Process Privilege.**

The anticipated scope of the ADAs' testimony potentially encompasses matters that are protected under the attorney work-product doctrine and/or the deliberative process privilege. The ADAs  should not be required to answer questions that might reveal the internal thought processes, mental impressions, and/or opinions of members of her office including, but not limited to, her own.

### 1. The Work-Product Doctrine.

The work-product doctrine reflects a "general policy against invading the privacy of an attorney's course of preparation." Hickman v. Taylor, 329 U.S. 495, 512 (1947). The Supreme Court has explained its justification in the following terms:

> Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney. . . . In performing his various duties . . . it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. . . . This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways . . . . Were such materials open to opposing counsel . . . [i]nefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

Id. at 510-11. The doctrine, thus, broadly shields attorney work product from disclosure to promote the strong "public policy underlying the orderly prosecution and defense of legal claims" and to prevent the chilling effect on attorney work that could be produced by the mere fear of disclosure.[3] Id at 510. "Although the work-product doctrine most frequently is asserted as a bar to discovery in civil litigation, its role in assuring the proper functioning of the criminal justice system is even more vital." Nobles, 422 U.S. at 238. Thus, the "doctrine applies to criminal litigation as well as civil" and "protect[s] material prepared by agents for the attorney as well as those

---

[3] Subpoenas to non-parties are governed by Federal Rule of Civil Procedure 45, which expressly requires quashing or modifying a subpoena that calls for "disclosure of privileged or other protected matter." It contemplates one's "withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material." Fed. R. Civ. P. 45(d)(3)(A)(ii), (e)(2)(A). Subsection (e)(2) (formerly subsection (d)(2), prior to the 2013 amendments to the rule), in fact, was intended to cover claims of "work product protection." Id. Advisory Comm. Notes to 1991 amendments.

prepared by the attorney himself." <u>Id</u>. at 236, 238-39; <u>Liang</u>, 434 Mass. 131 at 139 (work-product doctrine applies to notes of victim-witness advocate).

The mental impressions, thought processes, and opinions of an attorney are entitled to the highest degree of protection independently of any procedural rule. See <u>Hickman</u>, 329 U.S. at 509-14 (making clear that work product rule arose as a matter of public policy); <u>Nobles</u>, 422 U.S. at 238 (declaring, with respect to work product doctrine, "the interests of society and the accused in obtaining a fair and accurate resolution of the question of guilt or innocence demand that adequate safeguards assure the thorough preparation and presentation of each side of the case.").

The weight of authority runs counter to any suggestion that the privilege does not protect work product prepared in connection with matters other than the action in which the discovery is sought. See generally <u>In re Grand Jury Subpoena</u>, 220 F.R.D. 130, 149-50 & n.10 (D. Mass. 2004) (Young, J.) (discussing cases from various circuits). See also <u>In re Murphy</u>, 560 F.2d at 335 ("the work product privilege extends to documents prepared in previous, unrelated litigation"); <u>Fed. Election Comm'n</u> v. <u>Christian Coal.</u>, 179 F.R.D. 22, 24 (D.D.C. 1998) ("the more considered view appears to be that work product protection applies (1) to materials prepared for any litigation and that (2) . . . the protection survives the termination of the litigation for which it was prepared, and that under the rationale of <u>Hickman</u>, non-parties should be able to assert work product privilege claims even though [Fed. R. Civ. P.] 26(b)(3) is phrased only in terms of the parties"); <u>Wood</u> v. <u>McCown</u>, 784 S.W.2d 126, 129 (Tex. App. 1990) (explaining that work-product privilege does not terminate for a criminal case

when the criminal case is completed and work-product from the former criminal

defense counsel is sought in a subsequent civil case).

Importantly, a high degree of protection extends to an attorney's impressions regarding

the statements of witnesses. See, e.g., In re Sealed Case, 856 F.2d 268, 273 (D.C. Cir. 1988)

(agreeing that "recollections of [witness] interviews, which were made in anticipation of

litigation, are protected attorney work product"; affirming that the Hickman Court "held that

work product immunity extended to oral statements made by witnesses to attorneys whether

presently in the form of mental impressions or memoranda"; and stating that "a far stronger

showing is required" to obtain "work product . . . based on oral statements from witnesses" than

"work-product protected documents and other things" (quotation omitted)); In re Atlantic Fin.

Mgmt. Sec. Litig., 121 F.R.D. at 143 ("The protection of attorney work product material is

designed, above all, to protect the mental impressions and thought processes of attorneys. An

attorney's summaries of testimony certainly reveal his or her mental impressions or opinions

about the case. This type of material deserves the most stringent protection." (citations omitted));

Liang, 434 Mass. at 138-40 (explaining that production of notes and comments regarding

witnesses' oral statements "is particularly disfavored because it tends to reveal the attorney's

mental processes" (quotation omitted)); Commonwealth v. Borans, 379 Mass. 117, 151-54

(1979) (affirming judge's denial of discovery request for notes of

prosecutor and his investigators relating to conversations with witnesses, after prosecutor

represented to judge that notes constituted work product).

### 2.      The Deliberative-Process Privilege.

The deliberative-process privilege is similar. It "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions, by protecting open and frank discussion among those who make them within the Government." Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8-9 (2001) (citations and quotation omitted). In other words:

> Federal courts have long recognized a policy against exploratory inquiries into the mental processes of governmental decision makers. . . . The cases uniformly rest the privilege on the policy of protecting the decision making processes of government agencies . . . . Manifestly, the ultimate purpose of this long-recognized privilege is to prevent injury to the quality of agency decisions. Also underlying the policy is the rationale that the time and energies of public officials be conserved for the public's business to as great an extent as may be consistent with the ends of justice in particular cases.
>
> Gomez v. City of Nashua, 126 F.R.D. 432, 434 (D.N.H. 1989) (quotations

omitted) (applying doctrine in situation involving prosecutor).

Two important points about the privilege warrant mention here. First, while cases such as Klamath Water Users discuss the application of the privilege to documents, it extends equally to "exploratory inquiries into the mental processes of governmental decision makers." Gomez, 126 F.R.D. at 434. And second, even when portions of a prosecutor's testimony could properly be deemed factual information, discovery of that factual information is not permitted to the extent that it may disclose or be intertwined with deliberative information. That is, "factual information may also be privileged if it is inextricably intertwined with the process by which policy is made or if the manner of

> selecting or presenting the facts would reveal the deliberative process." Id. at 435. In addition, such factual information should not generally be obtained through testimony of

the prosecutor, unless it is unavailable from other sources. Id. at 435-36 ("Courts generally refuse to compel the [testimony] of a government witness if the plaintiff may obtain discovery by an alternative and less burdensome method to the government."). Such a result is sound because a prosecutor's office performs numerous investigations into purported criminal conduct as part of its public function. Subjecting employees of that office to deposition absent the showing of a compelling need would violate public policy concerns that the time and resources of that office be conserved for the public business." Id.

When invoked, the deliberative process privilege is generally understood to require a case-specific balancing of interests. See Gomez, 126 F.R.D. at 434 (discussing balancing). That is, "a party seeking [the information] must make a threshold showing of need, amounting to more than 'mere speculation.'" Association for Reduction of Violence v. Hall, 734 F.2d 63, 66 (1st Cir. 1984) (discussing principle in context of documents). "The interest of the party asserting a privilege is strongest when the information in question falls squarely within the definition of privilege and its disclosure would 'undermine the public interest in free, candid, and uninhibited exchange of information or jeopardize the physical security of an individual or governmental institution.'" Gomez, 126 F.R.D. at 435 (quoting Hall, 734 F.2d at 66).

### 3. These Two Protections Should Apply Here To Bar the ADAs Testimony

Both the work-product doctrine and the deliberative process privilege should be found applicable here. Given the nature of the allegations in the plaintiffs' complaint, Doc. No. 1, Ex. 1, it seems likely that plaintiff's counsel will seek to question the ADAs  about their  office's

investigation, which would likely include internal communications among attorneys and staff members at the District Attorney's office, particularly since the ADAs were not themselves percipient witnesses to the events that led to the plaintiff's employment termination. This is exactly the type of information that courts have understood the work-product doctrine and the deliberative process privilege to protect.

Time and again, members of this Court have recognized that the opinion work product and deliberative processes of a prosecutor regarding charging and litigation decisions are entitled to protection from disclosure in a subsequent civil action. See Suazo v. Emery, et al., No. 18-10228-JCB, at *9 (D. Mass. July 18, 2019) (Boal, M.J.) (unpublished decision) (applying work-product and deliberative-process privileges to bar deposition testimony about prosecutor's thoughts regarding prosecution); Stamps v. Town of Framingham, No. 12-11908-FDS, 2014 WL 1598019, at *7 (D. Mass. Apr. 16, 2014) (Saylor, J.) (unpublished) ("The documents at issue are e-mails between attorneys of the DA's office about the strategy and approach the office would take toward this case. Because the interests outlined in Hickman are fully implicated by these documents, the Court finds that the Magistrate Judge's decision that they are protected by the attorney work-product doctrine was not clearly erroneous or contrary to law."); Starkey v. Birritteri, No. 12-10988-RWZ, at *2 (D. Mass. Aug. 2, 2013) (Zobel, J.) (unpublished) (applying work product and deliberative process privilege to shield assistant district attorney's thoughts regarding prosecution).

Other courts from around the nation share that view. See, e.g., Estate of Dabela v. Town of Redding, No. 3:16CV534 (RNC) at *2 (D. Conn. Mar. 23, 2018) (unpublished) (sustaining objections to questions that would have revealed "the deliberations, analysis, opinions,

recommendations, debate, and/or advice regarding" a prosecutor's decision); Fortunati v. Campagne, No. 07-143 at *2-*3 (D. Vt. Feb. 12, 2009) (unpublished) (applying deliberative process privilege to decisions made by state prosecutors in course of investigation); Sullivan v. Stefanik, 605 F. Supp. 258, 260 (N.D. Ill. 1985) (concluding, in section 1983 action alleging false imprisonment and malicious prosecution, that plaintiff could depose Assistant States Attorney in an effort to reconstruct the state court record, but that "it would be improper to ask him about his own mental processes or opinions"); Smith v. City of New York, 854 N.Y.S.2d 44, 45 (App. Div. 2008) (quashing deposition subpoena for assistant district attorney in context of malicious prosecution case, where civil plaintiff sought testimony regarding motives for prosecution); see also Messenger v. Ingham County Prosecutor, 591 N.W.2d 393, 400 (Mich. Ct. App. 1998) (noting, in context of public records case, that "public policy imperatives for ensuring the effective functioning of the prosecutor's office militate against requiring prosecutors to submit to oral discovery concerning their work product").

The plaintiff has not, and cannot, offer any persuasive basis to chart a different course here. Casting the work-product doctrine and the deliberative process privilege aside in this case likely would yield no significant benefits and instead only cause grave harm. The plaintiff's complaint centers upon what the police and certain Somerville officials did (or did not do) in connection with the plaintiff's termination as a police officer—not upon the opinions, mental impressions, and deliberative processes of the ADAs in particular, or of members of her office more generally. It is far from clear that requiring the ADAs to testify would yield anything of relevance or value with respect to any claim or defense. Worse, disclosure of work product or deliberative processes could do harm even though the relevant investigation and prosecutions have concluded, for it would almost certainly reveal information concerning strategizing and

decision-making generally, or it could simply have a chilling effect on the ability of prosecutors and their staff to communicate candidly in the performance of their legitimate duties. For all these reasons, the subpoena should be quashed.

**B. A Limited Portion Of The ADAs Potential Testimony Is Protected By The Federal Law Enforcement Investigative Privilege.**

Additional testimony may also be protected by another privilege that is designed to maintain the confidentiality of certain law enforcement information: the federal common-law privilege protecting law enforcement investigative information and techniques. See, e.g., Puerto Rico v. United States, 490 F.3d 50, 62-64 (1st Cir. 2007) (expressly recognizing privilege's applicability to "'law enforcement techniques and procedures,'" in addition to "'confidential government surveillance information,'" and noting its broad application by other courts); see also Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211, 222 (1979); Hall, 734 F.2d at 65-66; Gomez, 126 F.R.D. at 434; United States v. Lilly, 185 F.R.D. 113, 115 (D. Mass. 1999).

This privilege serves "to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witnesses and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." In re Dep't of Investigation of City of New York, 856 F.2d 481, 484 (2d Cir. 1988). It extends to documents and testimony, id., and it applies equally to investigations that have ended and those that are ongoing. See Black v. Sheraton Corp. of Am., 564 F.2d 531, 546 (D.C. Cir. 1977).

> It is clear that if investigatory files were made public subsequent to the termination of enforcement proceedings, the ability of any investigatory body to conduct future investigations would be seriously impaired. Few persons would respond candidly to investigators if they feared that their remarks would become public record after the proceedings. Further, the investigative techniques of the investigating body would be disclosed to the general public.

Id. (quotation omitted).

Further, courts have applied the law enforcement privilege to prohibit discovery in a federal civil rights action in which a litigant seeks to discover investigative information or testimony from a related criminal proceeding. See, e.g., Gomez, 126 F.R.D. at 434-36 (plaintiff in civil rights action against police department sought to depose prosecutor about related criminal investigation and prosecution); Dellwood Farms, Inc. v. Cargill, 128 F.3d 1122, 1125 (7th Cir. 1997) (plaintiffs, victims in related criminal proceeding, subpoenaed evidence that nonparty Department of Justice held for use in criminal investigation).

As the privilege is designed to protect the interests of law enforcement as well as the interests of witnesses, any argument that a particular source consented to disclosure would not operate to lift the protections of the privilege. See, e.g., Irons v. FBI, 811 F.2d 681, 688 (1st Cir. 1987) (stating that protection for confidential sources is designed to further law enforcement interest in receiving free flow of information, in addition to source's interest in confidentiality); see also Cleary v. FBI, 811 F.2d 421, 423 (8th Cir. 1987); Kiraly v. FBI, 728 F.2d 273, 278 (6th Cir. 1984). Moreover, the privilege will not be deemed waived based on any prior disclosure of a portion of the information at issue. See Murphy v. FBI, 490 F. Supp. 1138, 1141 (D.D.C. 1980); cf. FBI v. Abramson, 456 U.S. 615, 631-32 (1982) (stating that information included in record prepared for law enforcement purposes does not lose protection upon being reproduced or summarized in document prepared for other purposes).

This privilege is generally understood to call for a case-specific balancing of interests like that which is employed with respect to the deliberative process privilege. See Gomez, 126 F.R.D. at 434 (discussing balancing); Kattar v. Doe, 1987 WL 11146, at *1 (D. Mass. Jan. 27, 1987) (unpublished) (Saris, M.J.) ("The Court must balance the public interest in nondisclosure against

the need of the particular litigant for access to the [information protected by the law enforcement investigative privilege].”); see also Dellwood Farms, Inc. v. Cargill, Inc., 128 F.3d 1122, 1125 (7th Cir. 1997) (stating that there exists a “strong presumption against lifting the [law enforcement investigative] privilege”). Under such a balancing test, the party seeking discovery must show both that the information sought is highly relevant and unavailable from other sources. Hall, 734 F.2d at 66.

Here, to the extent the plaintiffs seek to pose questions concerning the District Attorney’s office’s investigation into the underlying crimes,  such questions could reveal information regarding “law enforcement techniques and procedures” used during that investigation. Puerto Rico, 490 F.3d at 64. In addition, because the ADAs were not themselves percipient witnesses to events that led to the plaintiff’s termination, any testimony they could offer could only derive from internal briefings and communications made during the investigation. Disclosure of these communications would reveal the very type of techniques and processes that the investigative privilege is designed to protect. Prosecutors and the public have a strong interest in maintaining the confidentiality of these materials to protect the integrity of future investigations.

Moreover, the plaintiffs’ interests in obtaining disclosure of such testimony is insufficient to outweigh the public interest in maintaining the confidentiality of this information. Puerto Rico, 490 F.3d at 64.. In addition, the plaintiff presumably will have the opportunity to obtain testimony from those who witnessed, first-hand, the events at issue. In light of the other available sources of relevant information and the fact that the ADAs have no first-hand percipient knowledge of the events leading to the plaintiff’s termination, the plaintiff cannot show a compelling need for their testimony. See Hall, 734 F.2d at 66 (“The interest of the party seeking

disclosure tends to be strongest when the information in question is highly relevant, helpful, and unavailable from other sources.") (emphasis added). For this reason, too, the subpoena should be quashed.

### III. The ADAs  Should Not Reveal Material Constituting Criminal Offender Record Information Under State Law Without This Court's Authorization.

Massachusetts law restricts the handling and dissemination of "Criminal Offender Record Information" or "CORI" to protect "the interest of the individual in privacy" and to promote "the public interest in rehabilitation" of criminals. New Bedford Standard Times Publishing Co. v. Clerk of Third Dist. Court, 377 Mass. 404, 414 (1979); Kordis v. Superintendent, Souza Baranowski Correctional Ctr., 58 Mass. App. Ct. 902, 903 (2003); see Mass. Gen. Laws ch. 6, § 167, et seq. More specifically, state laws concerning CORI restrict the ability of holders of CORI, such as the ADAs, to disseminate it to third parties, such as the plaintiff.

CORI is defined to include:

> records and data in any communicable form compiled by a Massachusetts criminal justice agency which concern an identifiable individual and relate to the nature or disposition of a criminal charge, an arrest, a pre-trial proceeding, other judicial proceedings, previous hearings conducted pursuant to [Mass. Gen. Laws ch. 276, § 58A] where the defendant was detained prior to trial or released with conditions under subsection (2) of [Mass. Gen. Laws ch. 276, § 58A], sentencing, incarceration, rehabilitation, or release. Such information shall be restricted to information recorded in criminal proceedings that are not dismissed before arraignment. Criminal offender record information shall not include evaluative information, statistical and analytical reports and files in which individuals are not directly or indirectly identifiable, or intelligence information. Criminal offender record information shall be limited to information concerning persons who have attained the age of 18 and shall not include any information concerning criminal offenses or acts of delinquency committed by any person before he attained the age of 18; provided, however, that if a person under the age of 18 was adjudicated as an adult in superior court or adjudicated as an adult after transfer of a case from a juvenile session to another trial court department, information relating to such criminal offense shall be criminal offender record information. Criminal offender record information shall not include information concerning any offenses which are not punishable by incarceration.

Mass. Gen. Laws ch. 6, § 167 (emphasis added). <u>See Boston Globe Media Partners, LLC</u> v.

<u>Dept of Criminal Justice Info. Servs.,</u> 484 Mass. 279, 288 (2020) (discussing definition of

CORI); <u>see also</u> 803 C.M.R. 2.02, 2.03 (June 11, 2021) (setting forth definition of CORI and

listing "CORI Inclusions and Exclusions").

Here, it seems likely that the ADAs will be asked questions that would require them to disclose

CORI if the subpoena is not quashed. But, as mentioned, state law places significant restrictions

on the ability of individuals, such as the ADAs, to disseminate CORI. Section 178 of Chapter 6

of the Massachusetts General Laws prohibits "[a]n individual or entity [from] . . . knowingly

communicat[ing] or attempt[ing] to communicate [CORI] to any other individual or entity

except in accordance with the provisions of [Mass. Gen. Laws ch. 6, §§] 168 through 175."

There is very little case law construing Section 178 or the provisions listed therein, with respect

to the propriety of providing CORI when responding to a subpoena in a civil action.

Accordingly, absent a court order, prudence requires that the ADAs refrain from providing

CORI.

**IV.  The ADAs Are Prohibited From Disclosing Matters Occurring Before A Grand Jury**

An Assistant District Attorney is not permitted to disclose grand jury proceedings.

The judge may direct that an indictment be kept secret until after arrest. In such an instance, the clerk shall seal the indictment and no person may disclose the finding of the indictment except as is necessary for the issuance and execution of a warrant. **A person performing an official function in relation to the grand jury may not disclose matters occurring before the grand jury except in the performance of his or her official duties or when specifically directed to do so by the court.** No obligation of secrecy may be imposed upon any person except in accordance with law.

Mass. R. Crim. P. 5(d) (emphasis added). An Assistant District Attorney testifying under subpoena as a witness in a civil case in federal court clearly is not acting "in the performance of his official duties." Id. Accordingly, the ADAs are prohibited from answering any questions that seek disclosure of matters that occurred before a Superior Court grand jury, unless they are so directed by a justice of the Superior Court.

## **CONCLUSION**

For the foregoing reasons, the subpoenas should be quashed. If this Court concludes that the subpoenas should not be quashed, this Court should instead enter a protective order to prevent unwarranted intrusions on the protections described herein. In addition, the ADAs request that if the subpoena is not quashed, that an attorney representing them in their capacities as Assistant District Attorneys be permitted to be present during their direct and cross-examination to assert objections to any questions that seek privileged or otherwise protected information.[4]

<div style="margin-left:40%">

Respectfully submitted,
For the Commonwealth,
MARIAN T. RYAN
District Attorney

NICOLE ALLAIN and
DANIEL HARREN
Assistant District Attorneys

*/s/Howard P. Blatchford, Jr.*
HOWARD P. BLATCHFORD, JR.
Assistant District Attorney
BBO No. 045580
Office of the Middlesex District Attorney
Appeals Bureau
15 Commonwealth Avenue
Woburn, Massachusetts 01801
Tel. (781) 897-6825
howard.blatchford@mass.gov

</div>

Dated: October 17, 2024

## **CERTIFICATE OF SERVICE**

I, Howard P. Blatchford, Jr., an attorney admitted to the bar of the U.S. District Court for the District of Massachusetts, certify that on October 17, 2024, I filed the foregoing document through the Court's CM/ECF system, which effected service on all counsel of record.

<div style="margin-left:40%">

*/s/ Howard P. Blatchford, Jr.*
Howard P. Blatchford, Jr.
Assistant District Attorney

</div>

---

[4] If the subpoena is not quashed, the ADAs also reserve the right to raise other arguments and objections that become apparent during any trial testimony.

Exhibit A

AO 88 (Rev 02/14) Subpoena to Appear and Testify at a Hearing or Trial in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
District of Massachusetts

| | | |
|---|---|---|
| Dante DiFronzo | ) | |
| _Plaintiff_ | ) | |
| v. | ) | Civil Action No.   21-10867-FDS |
| City of Somerville, et al | ) | |
| _Defendant_ | ) | |

## SUBPOENA TO APPEAR AND TESTIFY
## AT A HEARING OR TRIAL IN A CIVIL ACTION

To  Nicole Allain, ADA

_(Name of person to whom this subpoena is directed)_

**YOU ARE COMMANDED** to appear in the United States district court at the time, date, and place set forth below to testify at a hearing or trial in this civil action.  When you arrive, you must remain at the court until the judge or a court officer allows you to leave.

| Place· US District Court, 1 Courthouse Way Boston, MA 02210 | Courtroom No.: 10 |
|---|---|
| | Date and Time  10/22/2024 9 00 am |

You must also bring with you the following documents, electronically stored information, or objects _(leave blank if not applicable)·_   Government issued identification

The following provisions of Fed  R. Civ  P 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so

Date   10/04/2024

| CLERK OF COURT | |
|---|---|
| | OR |
| _Signature of Clerk or Deputy Clerk_ | _Timothy M. Burke_ _Attorney's signature_ |

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_   Dante DiFronzo
_____ , who issues or requests this subpoena, are·
Timothy M  Burke, Esq , 117 Kendrick Street, Suite 300, Needham, MA 02494

## Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ  P  45(a)(4).

Exhibit B

AO 88 (Rev 02/14) Subpoena to Appear and Testify at a Hearing or Trial in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Massachusetts

| | | |
|---|---|---|
| Dante DiFronzo | ) | |
| *Plaintiff* | ) | |
| v | ) | Civil Action No.   21-10867-FDS |
| City of Somerville, et al | ) | |
| *Defendant* | ) | |

## SUBPOENA TO APPEAR AND TESTIFY
## AT A HEARING OR TRIAL IN A CIVIL ACTION

To·  Daniel Harren, ADA

*(Name of person to whom this subpoena is directed)*

**YOU ARE COMMANDED** to appear in the United States district court at the time, date, and place set forth below to testify at a hearing or trial in this civil action   When you arrive, you must remain at the court until the judge or a court officer allows you to leave

| Place | US District Court, 1 Courthouse Way Boston, MA 02210 | Courtroom No  10 |
|---|---|---|
| | | Date and Time  10/22/2024 9 00 am |

You must also bring with you the following documents, electronically stored information, or objects *(leave blank if not applicable)*·  Government issued identification

The following provisions of Fed  R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance, Rule 45(d), relating to your protection as a person subject to a subpoena, and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date   10/04/2024

CLERK OF COURT

OR

_____      *Timothy M. Burke*
*Signature of Clerk or Deputy Clerk*           *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Dante DiFronzo
_____ , who issues or requests this subpoena, are

Timothy M  Burke, Esq , 117 Kendrick Street, Suite 300, Needham, MA 02494

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R  Civ  P  45(a)(4)