UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| DANTE A. DIFRONZO, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 21-10867-FDS |
| CITY OF SOMERVILLE, et al., | ) ) ) | |
| Defendants. | ) ) | |

MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR
AWARD OF ATTORNEYS' FEES AND COSTS

**SAYLOR, C.J.**

On October 23, 2024, a jury returned a verdict in plaintiff's favor on his claims of First-Amendment retaliation and tortious interference with an advantageous relationship. (ECF 99). The jury awarded plaintiff $800,000 in damages. (*Id.*). Defendants moved for judgment as a matter of law at the close of the evidence, and renewed their motion after the jury's verdict, at which time they moved, in the alternative, for a new trial. Those motions were denied. Plaintiff has now moved, pursuant to 42 U.S.C. § 1988, for an award of attorneys' fees and costs. For the reasons set forth below, the motion will be granted, with certain reductions as noted below.

**I.     Background**

Plaintiff submitted a motion for attorneys' fees and costs that included an invoice reflecting attorney time entries and costs incurred along with declarations from each attorney attesting to his experience, qualifications, and work on the case.

Plaintiff seeks to recover a total of $305,170 in attorney's fees and $5,492.06 in costs related to the litigation.

## II. Analysis

### A. Entitlement to Fee Award

Under 42 U.S.C. § 1988, a plaintiff who prevails in a § 1983 claim may be awarded reasonable attorneys' fees.[1]  Although the fee-shifting provision of § 1988 "is couched in permissive terminology, awards in favor of prevailing civil rights plaintiffs are virtually obligatory." *Diaz-Rivera v. Rivera-Rodriguez*, 377 F.3d 119, 124 (1st Cir. 2004) (internal quotation marks omitted).

Here, there is no dispute that plaintiff is the prevailing party, and defendants do not dispute that plaintiff is entitled to a fee award; the only issue is what amount of attorneys' fees and costs is reasonable.

### B. Reasonable Attorneys' Fees

Under the § 1988 fee-shifting provision, a district court has "broad" discretion to determine what reasonable fees and costs should be awarded. *United States v. Metropolitan Dist. Comm'n*, 847 F.2d 12, 14 (1st Cir. 1988).  The court need not accept the hours and rates offered by the prevailing party.  Indeed, the attorneys' records should be "scrutinized with care." *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 950 (1st Cir. 1984).  However, "trial courts need not, and indeed should not, become green-eyeshade accountants," because "[t]he essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

In this Circuit, "[t]he lodestar approach is the method of choice for calculating fee awards." *Matalon v. Hynnes*, 806 F.3d 627, 638 (1st Cir. 2015).  The lodestar approach "requires the district court to ascertain the number of hours productively expended and multiply

---

[1] "In any action or proceeding to enforce a provision of section[] . . . 1983, . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . ." 42 U.S.C. § 1988(b).

that time by reasonable hourly rates." *Spooner v. EEN, Inc.*, 644 F.3d 62, 68 (1st Cir. 2011). The party seeking the award bears the burden of establishing both the time and rate components of the calculation, *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), and may do so by providing "contemporaneous time and billing records and information establishing the usual and customary rates in the marketplace for comparably credentialed counsel," *id.* (citing *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 295-96 (1st Cir. 2001)).

In fashioning the lodestar, the court first determines "how much compensable time counsel spent on the case, deleting any 'duplicative, unproductive, or excessive hours.'" *Spooner*, 644 F.3d at 68 (quoting *Gay Officers Action League*, 247 F.3d at 295). "[T]he court has a right—indeed, a duty—'to see whether counsel substantially exceeded the bounds of reasonable effort.'" *Metro. Dist. Comm'n*, 847 F.2d at 17 (quoting *Pilkington v. Bevilacqua*, 632 F.2d 922, 925 (1st Cir. 1980)).

After determining the number of hours reasonably expended, the court then multiplies the compensable time by the prevailing rates in the community, thereby yielding the lodestar amount. *Gay Officers Action League*, 247 F.3d at 295. In deciding a reasonable hourly rate, the court must consider "the type of work performed, who performed it, the expertise that it required, and when it was undertaken." *Hefter Impact Techs., LLC v. Sport Maska, Inc.*, 2017 WL 5798642, at *2 (D. Mass. Nov. 28, 2017) (quoting *Grendel's Den*, 749 F.2d at 950).

Although the calculated lodestar amount "represents a presumptively reasonable fee," *Lipsett v. Blanco*, 975 F.2d 934, 937 (1st Cir. 1992), the court retains "extremely broad" discretion to adjust it up or down based on other factors not captured in the calculation, *see, e.g.*, *Pérez-Sosa v. Garland*, 22 F.4th 312, 320-21 (1st Cir. 2022). Those factors include

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee;

3

(6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Diaz v. Jiten Hotel Mgmt.*, 741 F.3d 170, 177 n.7 (1st Cir. 2013) (quoting *Hensley*, 461 U.S. at 430 n.3) (internal quotations omitted).

### 1. Hours Reasonably Expended

Plaintiff seeks attorneys' fees for 109.6 hours of work performed by attorney Timothy Burke and 502.2 hours of work performed by attorney Jared Burke. Defendants contend that those figures are too high as a result of (1) inflated hours reported for particular tasks; (2) the inclusion of hours worked on tasks unrelated to this litigation; and (3) insufficient description as to tasks performed during certain blocks of time.

#### a. Allegedly Excessive Hours

Defendant first challenges certain specific time entries as inflated. The Court does not find that the entries in question "substantially exceeded the bounds of reasonable effort." *Pilkington*, 632 F.2d at 925. "By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

Here, defendants' conclusory attacks on particular entries are unconvincing. The vast majority of the entries challenged are simply highlighted without any explanation as to why the reported expenditure of time is unreasonable, and the time spent does not appear so unreasonable on its face that the Court can confidently override the attorneys' professional judgment. Defendants specifically address only three of the highlighted entries.

The first is an entry made on January 23, 2018, indicating that 3.6 hours were spent on a "[d]raft of letter to Somerville Chief Fallon re: Client/Brady Letter." (Pl. Mot. Ex. 1 at 2).

4

Plaintiff attached a copy of the letter in question to his reply memorandum as an exhibit. (Reply Ex. 2). It is a detailed letter that appears to reflect substantial legal research and analysis in advocating for plaintiff—a task that reasonably could have taken 3.6 hours of attorney time.

The second and third entries called out for alleged inflation are characterized by defendants as "bill[ing] a total of 3 hours for reading two Boston Globe articles." (Opp. at 5). That characterization is misleading. The first of those entries reflects 1.8 hours of time spent reading and reviewing a Boston Globe article *and* having a phone call with plaintiff concerning the article and the potential for related defamation and slander claims. The second of the "Boston Globe" entries reflects 1.2 hours spent on similar activity. The Court cannot say that taking less than two hours to read an article, assess its legal implications, and engage in a phone call discussing those implications with a client is so facially unreasonable as to warrant an adjustment. The remainder of the challenged entries are similarly plausible and will not be adjusted.

### b.     Time Allegedly Spent on Separate Matters

Defendants next contend that several entries reflect time spent on tasks unrelated to the present litigation and that those entries should therefore be excluded from the fee award. Specifically, defendants take issue with the time billed for tasks relating to plaintiff's disciplinary hearings.

"Courts generally do not recognize time billed to matters unrelated to the litigation for which an attorney has been retained." *E.E.O.C. v. AutoZone, Inc.*, 934 F. Supp. 2d 342, 352 (D. Mass. 2013). However, a proceeding may be separate from the litigation, but nevertheless related to it. And a "district court may award attorney's fees to a prevailing plaintiff for time reasonably expended in connection with a separate but related case." *Perez-Sosa*, 22 F.4th at

324. "To be compensable, though, the time expended must be devoted to work that is useful and of a type that is ordinarily considered necessary to the matter at hand." *Id.*

Here, plaintiff's disciplinary proceeding is clearly separate from, but also clearly related to, the present litigation. The disciplinary proceeding concerned the same core conduct from which this litigation arose, and the proceeding itself became a significant factual aspect of the case. The hours billed in preparation for the hearing included time spent reviewing the very same materials that were central to this litigation, including *Brady* letters, communications of defendants concerning plaintiff's alleged misconduct, police reports, and prior disciplinary letters. It was certainly foreseeable that the disciplinary hearing and its outcome would become highly relevant to any contemplated litigation, and therefore it was surely necessary for plaintiff's attorneys to spend time carefully navigating the process and preparing both themselves and their client for the hearing. That work was both "useful and of a type that is ordinarily considered necessary to" a matter of this kind, and thus will not be deducted from the fee award. *Id.*

Defendants also challenge the hours spent reviewing the grand-jury investigation of Jonathan Machado. They allege that whatever materials were reviewed, even if likely discoverable, were not produced, and thus the time spent reviewing those materials should not be included in the fee award. A thorough representation often requires the review of materials that turn out to be irrelevant or not discoverable. But neither the parties' briefing nor the relevant billing entries provide the Court a basis for determining whether the materials were in fact *improperly* withheld. Given the ambiguity (in part arising from plaintiff's vague billing entries) and plaintiff's lack of a response to defendants' assertion, the Court will credit only 50% of the 4.5 hours spent reviewing materials related to the grand-jury investigation.

c.      **Allegedly Vague Entries**

Defendants next contend that the single-line entries for attorney Timothy Burke's trial days warrant reduction. While a "fee application need not present the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney[,]" *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982) (citation and internal quotation marks omitted), it still must provide "sufficient detail that a neutral judge can make a fair evaluation of the time expended, the nature and need for the service, and the reasonable fees to be allowed[,]" *Hensley*, 461 U.S. at 441 (Burger, C.J., concurring).

The in-court trial days in this case typically ran from 8:30 a.m. to 1:00 p.m. Those 4.5 hours of in-court time are self-explanatory. Timothy Burke billed between 8.2 and 10.8 hours per trial day, in most cases with no further explanation than "jury trial." (Pl. Mot. Ex. 1 at 17-19).[2] While clearly lacking in detail, it can reasonably be inferred that substantial time was invested in preparation, debriefing, and strategizing each day before and after court was in session—in fact, any competent representation would require that. Preparing for and conducting a jury trial is a complex and dynamic undertaking requiring the expenditure of significant time and effort on a wide variety of tasks, some of which arise out of fluid and evolving circumstances. Given the substantial and variable demands of a typical trial day, the Court will not fault plaintiff's attorneys for failing to record the time spent on each specific constituent task undertaken on those days. The overall amount of time billed for attorney Timothy Burke's trial days is not facially unreasonable, and therefore those hours will not be reduced.

---

[2] Defendants did not challenge attorney Jared Burke's trial-day billing entries. While those entries provide more detail, the significant majority of the additional detail is simply a recounting of what happened during the 4.5 hours of in-court time. To that extent the entries do not actually provide any more detail than simply stating "jury trial."

7

### 2. **Reasonable Hourly Rates**

Plaintiff seeks attorneys' fees at a rate of $550 per hour for attorney Timothy Burke and $400 per hour for attorney Jared Burke. Attorney Timothy Burke has 49 years of experience and attorney Jared Burke has been practicing for 15 years. Defendants do not challenge the requested rates for "core" legal work, and the Court agrees that those rates are in line with "the prevailing hourly rate in Boston for attorneys of comparable skill, experience, and reputation." *Martino v. Massachusetts Bay Transp. Auth.*, 230 F. Supp. 2d 195, 205 (D. Mass. 2002); *see Muehe v. City of Boston*, 569 F. Supp. 3d 80, 85-87 (finding a rate of $495 per hour (in 2021 dollars) appropriate for a Boston-area associate with eight years of experience); *Alexander v. Massachusetts Dep't of Correction*, 734 F. Supp. 3d 133, 139-40 (D. Mass. 2024) (finding a rate of $560 to $600 per hour appropriate for a Boston-area law-firm partner with 29 years of experience). Defendants contend, however, that plaintiff has included "non-core" legal tasks in his fee-request, and that the rates for those tasks should be only two-thirds of the prevailing rates.

Courts sometimes apply differential rates to fees for "'core' tasks like 'legal research, writing of legal documents, court appearances, negotiations with opposing counsel, monitoring, and implementation of court orders'" and "'non-core' tasks, which are 'less demanding,' such as 'letter writing and telephone conversations.'" *Matalon*, 806 F.3d at 638 (quoting *Brewster v. Dukakis*, 3 F.3d 488, 492 n.4 (1st Cir. 1993)). However, "[w]hile the core/non-core distinction may be a useful tool for fashioning a reasonable fee in some cases, the choice of whether to employ that distinction is within the sound discretion of the district court." *Id.* at 639.

For most of the billing, the Court is not persuaded that application of a differential rate is appropriate. To begin, defendants do not provide any reasoning behind their choices to challenge certain entries reflecting phone calls, emails, or letters, but not others. And, as discussed above, the one letter that defendants do specifically refer to in their opposition

8

amounts to a substantial piece of written advocacy, not a "non-core" clerical task.  Similarly, the descriptions and contexts of many of the other phone calls, emails, and letters indicate that those activities were of the kind that "involves communicating with and/or advocating for a client, and [that] frequently cannot be performed by a paralegal," and thus should not necessarily "be considered less worthy of compensation than activities defined as 'core' work."  *Ciolino v. Eastman*, 2016 WL 6246757, at *3 (D. Mass. Oct. 25, 2016).

The Court will, however, apply a non-core rate to the hours billed for preparation of the fee petition itself.  The First Circuit has "repeatedly held that time reasonably expended in connection with fee applications is itself compensable, . . . . but, since time spent in this exercise often amounts to little more than documenting what a lawyer did and why he or she did it, . . . it may fairly be compensated at a reduced rate."  *Brewster*, 3 F.3d at 494 (cleaned up).  While fee requests involving "significant legal disputes" may warrant billing as core legal work, *Guckenberger v. Boston Univ.*, 8 F. Supp. 2d 91, 102 (D. Mass. 1998), the present petition was met with relatively straightforward challenges and involved accounting for the hours expended by only two attorneys.  Thus, the Court will treat the preparation and briefing of the fee petition as "non-core," and award fees for attorney Jared Burke's fee-petition work at a rate of two-thirds of his base rate.

C.   **Costs**

Plaintiff's attorneys have requested costs in the amount of $5,492.06.  They have submitted an itemized statement of those expenses.  (*See* Pl. Mot. Ex. 1 at 20-21).  Those costs can be categorized as follows:  filing fees, printing fees, witness fees, postage, deposition transcription, trial transcription, trial exhibit binders, copying fees, courthouse parking fees, and records requests.  For the most part, those fees appear both reasonable and necessary.  However, "[a] statute awarding 'costs' will not be construed as authorizing an award of litigation expenses

beyond the six categories listed in [28 U.S.C.] §§ 1821 and 1920, absent an explicit statutory instruction to that effect." *Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 340 (2019).  The fee-shifting provision in § 1988 refers only to "attorney's fees" and "costs."[3]  Therefore, the Court may only award litigation expenses that fall within the categories listed in 28 U.S.C. §§ 1821 and 1920.  The following claimed expenses do not fall within those categories and will therefore be deducted:  obtaining records from LifeStance Health ($13.00); postage ($23.29); PACER fee ($10.00); service of process upon defendants ($121.56); and parking for attorneys at trial ($602.00).  There is also a line item for "production of trial binders" that may include both recoverable and non-recoverable expenses, but no detail is provided.  The Court will therefore deduct that claimed expense ($1,232.53).

As to the copying and printing fees, there is no indication of what was copied or printed, or what the per-page rates were, and there is no additional supporting documentation providing that information.  Without that information, the Court has no way of determining the necessity of those expenses.  Thus, the Court will reduce those fees (totaling $72.44) by 50%.  *See Bowling v. Hasbro, Inc.*, 582 F. Supp. 2d 192, 210 (D.R.I. 2008) (reducing requested photocopying amount by 50% in order to account for unnecessary copies where, despite reporting total number of pages copied and price per copy, the prevailing party failed to provide evidence as to the necessity of the copies); *Rice v. Sunrise Express, Inc.*, 237 F. Supp. 2d 962, 981 (N.D. Ind. 2002) ("There is no itemization to show what items were copied or for what purpose they were copied.  As a result, the court shall reduce the number of copies by 20% to account for the possibility that some copies were made for the convenience of counsel and the parties.").

---

[3] Expert fees may be included in an award as part of the attorney's fee.  42 U.S.C. § 1988(c).

### D. Computation of Award

In total, plaintiff requests $311,202.06 in attorneys' fees and costs. The Court will credit only 50% of the 4.5 hours spent reviewing materials related to Machado's grand-jury investigation, resulting in a $900 reduction in the award; award fees for attorney Jared Burke's fee-petition work at a rate of two-thirds of his base rate, resulting in a $1,336.67 reduction; deduct expenses not covered by 28 U.S.C. §§ 1821 and 1920, resulting in a $2,002.38 reduction; and reduce the award for copying and printing, by half, resulting in a $36.22 reduction. Those reductions total $4,275.27, and the resulting award will be $306,926.79.

## III. Conclusion

For the foregoing reasons, plaintiff's motion for attorneys' fees and costs is GRANTED in the total amount of $306,926.79.

**So Ordered.**

Dated: June 6, 2025

/s/ F. Dennis Saylor IV  
F. Dennis Saylor IV  
Chief Judge, United States District Court